**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**MIDDLE DIVISION**

FILED

99 NOV 30  PM 4: 26

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

NOV 30 1999

| | |
|---|---|
| BOBBY WAYNE KENNEDY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) CV 95-BU-3323-M |
| DANIEL S. GOLDIN, Administrator, | ) |
| National Aeronautics and Space | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

Memorandum Opinion

In his remaining claims in this action, Plaintiff Bobby Wayne Kennedy, pro se, alleges that during his employment with the National Aeronautics and Space Administration ("NASA") he was denied promotions to at least 18 separate positions and endured other adverse consequences based upon his color, race, national origin, religion, gender, age, disability, and/or in retaliation for lodging administrative complaints charging unlawful discrimination. He thus claims that Defendant Daniel S. Goldin is liable in his capacity as Administrator of NASA for alleged violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634; and the Rehabilitation Act, 29 U.S.C. §§ 701-797. This cause comes to be heard on the following motions: (1) Defendant's motion for summary judgment on all remaining claims (Doc. No. 57), (2) Plaintiff's "motion in opposition" to Defendant's motion for summary judgment, which also requests oral argument (Doc. No. 75), (3) Defendant's motion to strike a number of claims argued and evidentiary items submitted by Plaintiff in opposition to the motion for summary judgment (Doc. No. 81), (4) an amended motion by Defendant to strike

85

such materials (Doc. No. 83), and (5) Plaintiff's "motion in objection" to Defendant's motions to strike (Doc. No. 84). The parties have briefed the motions, which are now ripe for decision. Upon consideration, the Court determines that Defendant's original and amended motions to strike (Doc. Nos. 81 & 83) are due to be GRANTED IN PART AND DENIED IN PART and that Plaintiff's "motion in objection" to the motions to strike (Doc. No. 84), which the Court treats in part as a motion for relief from a prior judgment based upon "newly discovered evidence," is due to be DENIED. The Court further concludes Defendant's motion for summary judgment (Doc. No. 57) is due to be GRANTED and that Plaintiff's "motion" in opposition to Defendant's motion for summary judgment (Doc. No. 75) is due to be DENIED.

## I. SUMMARY JUDGMENT STANDARDS

Summary judgment provides the parties an invaluable opportunity to test the mettle of a case before it ever reaches trial. On a motion for summary judgment, the court assesses all of the proof the parties can bring to bear in order to ascertain whether a genuine need for trial is present. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is weighed heavily in favor of the non-movant; it is appropriate only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A party seeking summary judgment has the initial responsibility of informing the Court of the grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. Id. at 323. The movant's burden is not meager; he must "point to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). Thus, it is never enough simply to state that the non-moving party cannot meet its burden at trial. Id. Once the moving party has satisfied its initial burden,

however, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 523 (11th Cir. 1994). Rule 56(e) requires the nonmoving party to "go beyond the pleadings" and by "affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts'" showing there exists a genuine issue for trial. Celotex, 477 U.S. at 324; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988).

In resolving whether a given factual dispute requires submission to a jury, the court must inspect the presented evidence through the looking glass of each party's substantive evidentiary burden. Anderson, 477 U.S. at 254-55. "It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather decide whether such issues exist to be tried. The Court must avoid weighing conflicting evidence or making credibility determinations." Hairston v. Gainesville Sun Publishing Co., 9 F.3d 913, 919 (11th Cir. 1993). In making its determination, a district court must view the record in the light most favorable to the nonmoving party and resolve all reasonable inferences in the nonmovant's favor. Rooney v. Watson, 101 F.3d 1378, 1380 (11th Cir. 1996) (citing Hale v. Tallapoosa Co., 50 F.3d 1579, 1581 (11th Cir. 1995)). At the same time, "[t]he nonmoving party must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law; 'there must be a substantial conflict in evidence to support a jury question.'" Tidwell v. Carter Products, 135 F.3d 1422, 1425 (11th Cir. 1998) (citing Carter v. City of Miami, 870 F.2d 578, 581 (11th Cir. 1989)).

## II. BACKGROUND[1]

---

[1]"The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the record. These are the 'facts' for summary judgment purposes only. They may not be the actual facts. See Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1400 (11th Cir. 1994)." Underwood v. Life Ins. Co. of Georgia, 14 F.Supp. 2d 1266, 1267 n.1 (N.D. Ala. 1998).

Plaintiff is a white male born September 27, 1936. He graduated from Jacksonville State University in 1958 with a bachelor's degree in chemistry. In October 1960, Plaintiff began working for NASA at its Marshall Space Flight Center ("MSFC") in Huntsville, Alabama, as an engineering technician at the GS-7 level. Plaintiff still works at the MSFC, and at least until a reorganization in May 1999, Plaintiff's job title was AST (Aerospace Technologist), Electronics of Materials, and he was the Deputy Chief of the Failure Analysis Branch in the Electrical Design Division of the Astrionics Laboratory.[2]  In this capacity, Plaintiff's primary area of expertise was battery performance testing, failure analysis, and destructive physical analysis. Plaintiff was promoted to his present GS-14 step 10 level position as the result of an agreement he signed on October 4, 1990, retroactive to September 11, 1988, settling a number of discrimination charges he had filed with NASA's Equal Opportunity Office. In 1984, Plaintiff was diagnosed with diabetes, and he also suffers from depression.

Plaintiff's claims in this action largely correspond to allegations set forth in 29 Equal Employment Opportunity ("EEO") complaints he filed with NASA's Equal Opportunity Office between June 22, 1994 and October 15, 1995. While claims stemming from some of those administrative complaints have been dismissed, see Doc. No. 26, it is undisputed that Plaintiff's remaining claims in this action encompass allegations to the effect that, as a result of unlawful discrimination and/or retaliation, he was denied promotions to at least 17 Supervisory AST positions at the GS-15 level and one position in the Senior Executive Service ("SES"), the

---

[2]The Court recognizes that the May 1999 reorganization changed some of the titles and structures of bureaucracy at the MSFC. However, none of the actions at issue in this case occurred subsequent to this reorganization, so the Court will discuss Plaintiff's claims and denied promotions in the context of the organizational structure as it previously existed.   Under that structure, there were several "Directorates," "Staff Offices," and "Program and Project Offices."   The largest by far of these organizations, in terms of the number of employees, was the Science and Engineering Directorate, in which Plaintiff worked.  This directorate was then divided into several "Laboratories," e.g., Materials & Processes, Structures & Dynamics, Systems Analysis & Integration, and Astrionics, where Plaintiff was located.  The Labs were then broken down into "Divisions," which were further subdivided into "Branches."

executive corps of the federal government. The Supervisory AST positions for which Plaintiff was passed over were awarded using a procedure called the NASA Competitive Placement Plan. Under this plan, vacancy announcements designated by a number and the prefix "CPP," are posted with descriptions of necessary skills for each position, known as KSAOC's (knowledge, skills, abilities and other characteristics). NASA employees applying for a position are required to submit a Personal Qualifications Statement (Form SF-171) showing that he or she meets the KSAOC's and has at least one year of specialized experience at the next lower grade on the General Schedule in the same field or in a closely related field related to the position listed. Upon the closing of a vacancy announcement, a personnel management specialist reviews the applications for minimum qualifications such as education, time-in-grade, and specialized experience. Applicants who are considered to lack the minimum requirements are deemed ineligible at this point in the process. The names of those who are deemed at least minimally qualified, however, are listed on a Promotion Certificate, which is forwarded to the selecting official. If there are ten or fewer qualified applicants for a position after the initial screening, all the remaining names are placed on the Promotion Certificate provided to the selection official for consideration. If there are more than ten minimally qualified applicants after the initial review, the applications are submitted to a rating panel, which reviews and ranks the applicants numerically. The panel may then refer up to ten candidates to the selecting official, or the panel may choose to refer only those applicants who scored above a certain point where some meaningful distinction in the score is observed. After receiving the Promotion Certificate, the selecting official, either alone or as a member of a panel, interviews applicants and then makes the ultimate decision.

The personnel positions for which Plaintiff was not selected despite his submission of applications in response to posted vacancy announcements are set forth below, with its announcement number and Plaintiff's corresponding EEO filing asserting that he was unlawfully denied the position:

(1) Supervisory AST, Electrical Systems (CPP 93-28-DC), October 15, 1994;

(2) Supervisory AST, Flight Systems Test (CPP 94-34-CT), October 15, 1994;

(3) Supervisory AST, Structure Materials (CPP 94-30-VR), November 25, 1994;

(4) Supervisory AST, Technology Utilization (CPP 94-46-CL), November 25, 1994;

(5) Supervisory AST, Electrical Power Systems (CPP 94-61-DC), November 25, 1994;

(6) Supervisory AST, Reliability (CPP 94-66-CV), November 25, 1994;

(7) Supervisory AST, Technical Resources Management (CPP 94-100-CL), November 25, 1994;

(8) & (9) Supervisory AST, Reliability (2 vacancies) (CPP 95-37-RE), August 28, 1995;

(10) Supervisory AST, Aerospace Flight Systems (CPP 95-49-CV), August 28, 1995 ;

(11) Supervisory AST, Aerospace Flight Systems (CPP 95-46-JB), October 12, 1995;

(12) Supervisory AST, Mission Operations Integration (CPP 95-50-CV), October 12, 1995;

(13) Supervisory AST, Navigation, Guidance & Control Systems (CPP 95-52-DC), October 12, 1995;

(14) Supervisory AST, Data Analysis (CPP 95-54-CL), October 12, 1995;

(15) Supervisory AST, Data Analysis (CPP 95-55-CL), October 12, 1995;

(16) Supervisory AST, Aerospace Flight Systems (CPP 95-58-JP), October 12, 1995;

(17) Supervisory AST, Materials and Structures (CPP 95-68-CL), October 12, 1995; and

(18) Senior Executive Service, Director, Environmental Engineering and Management Office (MSFC-ES-06-94), October 12, 1995.

It is further agreed that Plaintiff's remaining claims embrace charges that he was, for discriminatory and/or retaliatory reasons, subjected to other actions besides denials of promotion. Specifically, Plaintiff alleges that he was unlawfully forced to endure the following: (1) pages were removed from an affidavit Plaintiff submitted in rebuttal to an investigative report pertaining to one of his prior EEO complaints; (2) an EEO counselor investigating his complaints failed to speak with Plaintiff's witnesses; (3) Plaintiff was told by his immediate supervisor, David Nicolas, that their supervisor, Dr. Joseph Randall, said to Nicholas that Plaintiff was spending too much time on duty working on his EEO complaints and that Plaintiff could not meet with investigators, take administrative leave to meet with his attorney, take depositions, or attend court hearings; (4) Plaintiff was not allowed to take an extended-time buy-out retirement from NASA; (5) denied an opportunity to be selected as the Deputy

Director of the Safety and Mission Assurance Office, because such position vacancy was never announced; and (6) for the one-year evaluation period ending August 15, 1995, Plaintiff received a "fully successful" performance appraisal rating, rather than the "outstanding" rating he claims he deserved.

However, there is, apparently, some controversy over whether certain other EEO complaint allegations and attendant claims are still viable at this point in the litigation. In his responses to Defendant's motion for summary judgment, Plaintiff seems to contend that he might succeed on other claims, based upon allegations in prior EEO complaints he filed. Namely, Plaintiff contends that he might succeed on discrimination and/or retaliation claims regarding: (1) his non-selection in 1991 for a Supervisory AST, Electrical Systems position (announcement CPP 91-23-DC); (2) his non-selection in 1992 for a Senior Executive Service position, Assistant Administrator for Small and Disadvantaged Business Utilization (announcement HQK 001); and (3) a 21-day suspension he received for alleged sexual harassment. Defendant, however, asserts that these claims should be struck because, Defendant argues, they are barred by the doctrines of both res judicata and the law of the case.

### III. DISCUSSION

### A. All Claims regarding CPP 91-23-DC, HQK 001, and Plaintiff's 21-Day Suspension

Plaintiff argues in his brief that he was the victim of unlawful discrimination and/or retaliation when he was suspended for 21 days in June 1994 for alleged sexual harassment and when he was not selected for the promotions relating to announcements CPP 91-23-DC and HQK 001, which were filled in 1991 and 1992. Defendant, however, argues in its motions to strike, Doc. Nos. 81 & 83, that Plaintiff's claims based upon these allegations are barred by the doctrines of both res judicata and the law of the case. The Court agrees with Defendant.

Plaintiff filed a prior lawsuit in this Court against Defendant, CV 94-N-0016-M, that embraced the allegations of many prior EEO complaints Plaintiff filed. Among those EEO

complaints were two filed in 1991 and 1993 charging that he was denied promotions to the positions announced in CPP 91-23-DC and HQK 001 based upon discrimination and retaliation. In CV 94-N-0016-M, the Honorable Edwin L. Nelson granted summary judgment in favor of Defendant on all claims, expressly rejecting Plaintiff's claims with respect to those two promotions. See Defendant's Ex. F of evidentiary submission in support of Defendant's motion for partial summary judgment, Doc. No. 17 at 2-3, 19, 26. Plaintiff concedes as much. See Plaintiff's Motion in Objection, Doc. No. 84 at 3. Furthermore, in the present action, before it was reassigned to the undersigned, the Honorable C. Lynwood Smith granted partial summary judgment in favor of Defendant, ruling that, among other things, all of Plaintiff's claims relating to the matters alleged in his EEO complaints filed prior to October 15, 1994, were barred by the doctrine of res judicata, because those matters were disposed of in favor of Defendant in CV 94-N-0016-M. See Doc. No. 26. This obviously would include Plaintiff's 1991 and 1993 EEO complaints relating to the positions announced in CPP 91-23-DC and HQK 001. Judge Smith similarly concluded that all claims relating to Plaintiff's 21-day suspension from June 1994 were barred by res judicata because the "operative nucleus of facts" relating to the suspension was presented to Judge Nelson in the prior suit and encompassed by the summary judgment in that case.[3] Doc. No. 25 at 10. Judge Smith's ruling was affirmed

---

[3]NASA assigned Plaintiff's EEO complaints numbers ranging from "1" to "29(J)," with the "(J)" indicating that Plaintiff filed more than one complaint on a single day and that these were "joined" together and considered collectively for investigative and administrative purposes. Thus, although Plaintiff filed four individual EEO complaint forms dated June 22, 1994, NASA considered these collectively as a single complaint, 24(J). A list of the EEO complaints from 24(J) to 29(J) and the dates upon which Plaintiff filed them is set forth in the declaration of George E. Reese, the acting Associate Administrator of NASA's Office of Equal Opportunity Programs, Doc. No. 14. Judge Smith held that the allegations listed in Plaintiff's EEO complaint 24(J) are barred by res judicata because they all concern matters relating to Plaintiff's suspension. See Doc. No. 26 at 11. He similarly held that the allegations of three of the six individual complaints dated June 22, 1995, collectively referred to as complaint 27(J), were matters relating to the 21-day suspension and thus barred. Id. at 11-12. Although Judge Smith expressly listed which of the complaints comprising 27(J) related to the suspension and were therefore barred, see id. at 12 n.11, Plaintiff has included them in his evidentiary submission in opposition to the instant motion for summary judgment. See Plaintiff's Ex. 76 at 1-3 (Marked Def. Ex. 40-42). Plaintiff also argues that the

on appeal.  Kennedy v. Goldin, 140 F.3d 1043 (11th Cir. 1998) (table).

"Res judicata, or claim preclusion, bars a subsequent claim when a court of competent jurisdiction entered a final judgment on the merits of the same cause of action in a prior lawsuit between the same parties."  Pleming v. Universal-Rundle Corp., 142 F.3d 1354, 1356 (11th Cir. 1998).  Res judicata acts as a bar "not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same operative nucleus of fact."  Pleming v. Universal-Rundle Corp., 142 F.3d 1354, 1356 (11th Cir. 1998) (citation omitted).  The law of the case doctrine provides that an appellate court's decision of a legal issue generally must be followed in all subsequent trial or intermediate appellate proceedings in the same case unless (1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to [the contested] issue, or (3) the prior decision was clearly erroneous and would work manifest injustice.  Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999, 1003 n.7 (11th Cir. 1997).  Since the matters relating to Plaintiff's 21-day suspension and his non-selection to the positions announced in CPP 91-23-DC and HQK 001 were presented to the Court in CV 94-N-0016-M and resolved on the merits in Defendant's favor, those claims are barred by res judicata.  Further, since the United States Court of Appeals for the Eleventh Circuit affirmed Judge Smith's ruling that those same claims were barred by res judicata, the Eleventh Circuit's decision is the law of the case to be followed by this Court.

Plaintiff appears to argue, however, that his claims relating to his non-selection to these two positions and his 21-day suspension should still be considered viable based upon the fact that, in opposition to Defendant's present motion for summary judgment, he has presented additional evidence that, he claims, demonstrates that the summary judgment in CV 94-N-

---

partial summary judgment granted by Judge Smith does not embrace these complaints, but the Court finds that Plaintiff is simply mistaken on this point.

0016-M should not have been granted in favor of Defendant.  Plaintiff points to two pieces of

evidence.  The first is deposition testimony given by George McDonough, who was, until his

retirement from NASA in May 1995, the Director of the Science and Engineering Directorate

and Plaintiff's fourth level supervisor.   In his deposition, which was taken in an age

discrimination and retaliation case brought against NASA in 1997 by David Nicolas, Plaintiff's

immediate supervisor,[4] McDonough called Plaintiff "the biggest thorn in the side of the

organization he could possibly be for years . . ." because of the numerous EEO complaints he

had filed against NASA, Plaintiff's Ex. 2 at 36.  McDonough also admitted that he told Nicolas

that Nicolas's "fight [against] the system" in the form of continued EEO complaints after he had

been promoted to management at the MSFC would be considered a "black mark" against him,

although he denied that there was any formal or informal policy of retaliation at the MSFC for

filing EEO complaints.  Plaintiff's Ex. 2 at 50-54.  The second piece of evidence is an expert

report from Nicolas's case in which there was an attempt to show by use of statistical

probabilities that it was extremely unlikely that prior EEO activity was not a factor in 26

promotions for which Nicolas applied, assuming that all applicants were about equally qualified,

the promotion selections were mutually independent.[5]  Plaintiff argues that had McDonough's

---

[4]Plaintiff often refers to this case brought against NASA by David Nicholas.  That case was
voluntarily dismissed after a settlement was reached whereby Nicolas allegedly received a promotion to a
GS-15 position and backpay.  Plaintiff argues that the settlement in that case indicates that some kind of
"precedence" has been set such that he too should "win a settlement" from NASA.  Plaintiff's Aff. 1 at 5-6.
However, just because the parties agreed to settle Nicolas's claim in that suit does not compel NASA to
agree to settle Plaintiff's claims here.  Further, "[e]vidence of . . . accepting or offering or promising to
accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed
as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its
amount."  Fed. R. Evid. 408.  Thus, the fact that NASA settled a case with another employee is not
admissible as substantive evidence of its liability in this case.  See Lampliter Dinner Theater, Inc. v. Liberty
Mut. Ins. Co., 792 F.2d 1036, 1042 (11th Cir. 1986); Playboy Enterprises v. Chuckleberry Publ'g, Inc.,
687 F.2d 563, 568-69 (2nd Cir. 1982).

[5]Defendant seeks for the Court to strike McDonough's deposition testimony and Muse's statistical
report.  Defendant's Motions to Strike, Doc. Nos. 81 & 83.  The Court sees no reason to strike
McDonough's deposition, as he was one of Plaintiff's supervisors and he makes direct reference to Plaintiff

deposition testimony and the expert report been submitted in CV 94-N-0016-M, summary judgment would not have been granted, so he should now be allowed to pursue claims regarding these promotions and his suspension.[6] The Court disagrees.

The Court infers that Plaintiff is attempting to secure relief from the summary judgment entered in CV 94-0016-M because of the additional evidence he now presents. Under Fed. R. Civ. P. 60(b)(2), the Court may "on motion and upon such terms as are just . . . relieve a party . . . from a final judgment, order or proceeding" based upon "newly discovered evidence by which due diligence could not have been discovered in time to move for a new trial under Rule 59(b) . . . ." However, such a motion must be made "within a reasonable time and . . . not more than one year after the judgment, order or proceeding was entered or taken." Rule 60(b). Judge Nelson entered summary judgment in CV 94-N-0016-M on August 10, 1995, and that ruling was affirmed on appeal on May 20, 1996. Kennedy v. Goldin, 86 F.3d 1170 (11th Cir. 1996) (table). Plaintiff did not argue to this Court that his additional evidence entitled him to pursue the otherwise barred claims until his Motion in Objection to Defendant's Motion to Strike, Doc. No. 84, filed October 29, 1999. Obviously, Plaintiff's motion is not timely as one made pursuant to Rule 60(b)(2).

But a party may also file an independent action for relief from a prior judgment based upon newly discovered evidence, and such an action is not governed by the one-year limitations period applicable to a Rule 60(b)(2) motion. See Johnson Waste Materials v. Marshall, 611 F.2d 593, 597 (5th Cir. 1980).[7] See also Advisory Committee Notes to 1946 Amendment to

---

in that deposition. The Court agrees that Dr. Muse's report may be objectionable for the reasons Defendant cites, but the Court will nonetheless consider it at this point in the proceedings. So to the extent that Defendant's Motions to Strike seek the exclusion of these pieces of evidence, the motion will be denied.

[6]It appears from the data that Plaintiff also applied for 13 of the 26 positions sought by Nicolas.

[7]All decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to the close of business on September 30, 1981 are binding precedent in the Eleventh Circuit. Bonner v. City of

Fed. R. Civ. P. 60. However, Plaintiff's instant lawsuit cannot be characterized as one to set aside the prior judgment in CV 94-N-0016-M based upon the additional evidence he now cites, given that he filed this action long before that evidence was even generated in the course of Nicolas's suit.

Further, to prevail on such an independent action, Plaintiff would have to show: (1) that the evidence was discovered after the summary judgment motion was deemed submitted, (2) that he used due diligence to discover the evidence at the time of the summary judgment, (3) that the evidence is material and is not merely cumulative or impeaching, and (4) that introduction of the evidence would probably have produced a different result. See Johnson Waste Materials, 611 F.2d at 597; Callanan v. Runyun, 75 F.3d 1293, 1297 (8th Cir. 1996). Here, Plaintiff failed to exercise due diligence in that he could have deposed McDonough and constructed the same statistical analysis prior to the summary judgment in CV 94-N-0016-M, but he did not do so. Moreover, even if Plaintiff had presented his new evidence to Judge Nelson in CV 94-N-0016-M, it would not have changed the result, because there is no evidence that McDonough was himself involved as a decision-maker with respect to the employment actions in question. The Court concludes that Plaintiff has not shown that he is entitled to relief from the judgment entered in CV 94-N-0016-M, and his claims relating to his 21-day suspension and his non-selection for the vacancies corresponding to announcements CPP 91-23-DC and HQK 001 are barred by the doctrines of res judicata and the law of the case. Accordingly, Defendant's motions to strike (Doc. Nos. 81 & 83) will be granted to the extent they seek the dismissal of these claims.

## B. Discrimination Claims

### *Age

---

Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc). Also binding precedent in the Eleventh Circuit are all of the post-September 30, 1981 decisions of Unit B of the former Fifth Circuit. Stein v. Reynolds Securities, Inc., 667 F.2d 33, 34 (11th Cir. 1982).

Plaintiff alleges that NASA discriminated against him on the basis of age.  The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age," 29 U.S.C. § 623(a)(1), or "to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age." 29 U.S.C. § 623(a)(2).  The class protected under the ADEA are individuals between the ages of 40 and 70.  See 29 U.S.C. § 631(a); Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1432 (11th Cir. 1998).  Congress has extended the ADEA to cover employees of the federal government, 29 U.S.C. § 633a.

### *Race and Gender

Plaintiff also alleges that NASA discriminated against him on the basis of his race (white) and his sex (male).  Title VII of the Civil Rights Act of 1964 prohibits employment discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  It expressly prohibits refusing to hire or discharging an employee based on a prohibited factor. Id.  Likewise, Title VII also expressly provides that "[i]t shall be an unlawful employment practice for an employer . . . otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." Id.

### *Disability

Plaintiff's complaint asserts claims under sections 501 and 504 of the Rehabilitation Act, alleging that his employer, NASA, discriminated against him on the basis of his diabetes and depression.  Section 504 of the Rehabilitation Act provides:

> No otherwise qualified individual with handicaps in the United States ... shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity

conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a).  Section 501 of the Act imposes an obligation on federal agencies to promulgate affirmative action plans assuring "adequate hiring, placement, and advancement opportunities for individuals with handicaps." 29 U.S.C.A. § 791(b).  "In 1978, Congress extended the proscriptions of § 504 to activities of the federal government and created a private right of action under § 501 in favor of persons subjected to handicap discrimination by employing agencies of the federal government." Treadwell v. Alexander, 707 F.2d 473, 475 (11th Cir. 1983).  Private actions against federal government employers under the ADEA, whether brought under section 501 or 504, must satisfy the requirement of exhaustion of administrative remedies, as under Title VII. Doe v. Garrett, 903 F.2d 1455, 1461 (11th Cir. 1990), cert. denied, 499 U.S. 904 (1991).

The Court notes that Plaintiff's complaint also indicates that he is attempting to recover under Section 503 of the Rehabilitation Act , 29 U.S.C. § 793(a), which provides:

> Any contract in excess of $2,500 entered into by any Federal department or agency for the procurement of personal property and nonpersonal services (including construction) for the United States shall contain a provision requiring that, in employing persons to carry out such contract the party contracting with the United States shall take affirmative action to employ and advance in employment qualified handicapped individuals as defined in section 706(6) of this title. The provisions of this section shall apply to any subcontract in excess of $2,500 entered into by a prime contractor in carrying out any contract for the procurement of personal property and nonpersonal services (including construction) for the United States. The President shall implement the provisions of this section by promulgating regulations within ninety days after September 26, 1973.

On its face, however, Section 503 concerns discrimination by those who enter into contracts with the federal government for the procurement of personal property and nonpersonal services.  It does not apply to alleged discrimination by federal agencies against its own employees providing personal services.  Moreover, there is no private right of action

under section 503.  Rogers v. Frito-Lay, Inc., 611 F.2d 1074, 1085 (5th Cir.), cert. denied, 449 U.S. 889 (1980).  So Plaintiff has no viable claims under that section of the Rehabilitation Act.

## 1. Prima Facie Case of Discrimination

The mechanics of proving that an employer took action against an employee on the basis of some unlawful criterion are the same, regardless of whether his motivation is based upon age, race, gender, or disability.  Thus, an employee may seek to establish a prima facie case of unlawful disparate treatment discrimination in any one of three ways:  (1) by direct evidence of discriminatory intent; (2) by circumstantial evidence that raises a rebuttable presumption of discrimination (3) or through statistical proof.  Walker v. NationsBank of Florida N.A., 53 F.3d 1548, 1555 (11th Cir. 1995).  While Plaintiff has attempted to prove that he was retaliated against for filing EEO complaints by using statistical evidence, he has not presented such evidence to prove a pattern of discrimination.  He does allege, though, that he can prove discrimination on the basis of age, race, sex, and disability through the use of direct evidence.

## 1. Direct Evidence

For purposes of federal employment discrimination law, direct evidence "relates to actions or statements of an employer reflecting a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by an employee."  Carter v. Three Springs Residential Treatment, 132 F.3d 635, 641 (11th Cir. 1998) (citation omitted).  Thus, direct evidence must itself be sufficient for a trier of fact to conclude more probably than not that an employment decision was based upon improper discrimination.  See Wright v. Southland Corp., 187 F.3d 1287 (11th Cir. 1999).  Accordingly, evidence that merely suggests possible discrimination or is otherwise ambiguous does not constitute direct evidence.  Standard v. A.B.E.L. Services, Inc., 161 F.3d 1318, 1331-33 (11th Cir. 1998).  Similarly, statements made by persons who did not participate in the employment decisions at issue are not considered direct evidence.  See Evans v. McClain of Georgia, Inc., 131 F.3d 957, 962

(11th Cir. 1997);

Plaintiff refers the Court to two published articles regarding Defendant Goldin that Plaintiff claims supply direct evidence of age, race, and sex discrimination against him. The first is an interview that appeared in the April 27-May 3, 1992 issue of the publication <u>Space News</u>. There Goldin is quoted as follows:

> When people are in the same job for too long a period they get stale. The edge, the challenge of facing something new, isn't there. It might be appropriate to move people around and give them different things to do.
>
> We also have got to do a better job of bringing our younger employees together with our senior employees . . . while they are still here. There is a good possibility [that younger employees will be promoted more quickly.]
>
> Any work force that does not reflect the cultural diversity of America is a work force in need of change. I don't have the facts and figures, [but I sense that] we have got to be much more aggressive [recruiting minorities, women and the disabled.]
>
> We cannot have executive meetings where it is [all] middle-aged males with gray hair. I am part of the problem.

Plaintiff's Ex. 18 at 2 (brackets in original). The second article was published on October 24, 1993 in the <u>Huntsville Times</u>. Plaintiff alleges that Goldin is quoted as stating that "the culture of NASA is too male, pale, and stale and its time to change it." Plaintiff's Ex. 18. However, an examination of the <u>Huntsville Times</u> article reveals that the quote to which Plaintiff refers does not appear to be attributable to Goldin, but, rather, to a "NASA source who requested anonymity" who was supplying his "positive take" of an unreleased draft of a letter to senior NASA executives concerning an impending reorganization. However, even if Goldin had made the remark, neither it nor the interview statements constitute direct evidence that Plaintiff was subjected to age discrimination with respect to the agency actions he challenges in this case. Even assuming the statements indicate that Goldin may have some age-related bias and an inclination towards promoting women and minorities, the statements cannot be tied to any specific actions taken against Plaintiff, and there is no evidence, save Plaintiff's bald assertions,

that Goldin himself was involved in any of the relatively low level employment decisions of which Plaintiff complains.  See Standard, 161 F.3d at 1330; Mauter v. Hardy Corp., 825 F.2d 1554, 1558 (11th Cir. 1987).  Thus, these statements are not direct evidence that NASA discriminated against Plaintiff based upon age, race, or sex.

Also submitted as direct evidence of discrimination based upon age, Plaintiff points to a memo dated March 28, 1975, from Jack C. Swearengen, who was then the Associate Director of the Science and Engineering Directorate.  In the memo, Swearengen requested that recipients identify and list persons at the GS-12 and GS-13 levels "who have potential for positions of greater responsibility, leadership, and supervision" in order that they might take "appropriate training courses . . . to further prepare them for future assignments."  Plaintiff's Ex. 20.  Unto itself, this request might seem innocuous, but Swearengen then added, "Individuals in the grade of GS-14 may be considered for inclusion on this list as an exception; i.e., one with outstanding qualifications who is not over 40 years of age."  Id.  While the memo shows an age-related bias on the part of Swearengen, there is no evidence whatsoever that he participated in any of the decisions that Plaintiff challenges here, which all took place over 16 years after the memo was sent.  Thus, the memo is not direct evidence that Plaintiff was denied promotions or otherwise discriminated against based upon age.  See Eskra v. Provident Life and Acc. Ins. Co., 125 F.3d 1406, 1412 (11th Cir. 1997).

Finally, Plaintiff seems to contend that there is direct evidence that NASA violated the Rehabilitation Act, although Plaintiff has supplied no evidence of statements whatsoever indicating any bias against himself because of a disability or against the disabled generally.  Rather, in support of his direct evidence theory of proof, Plaintiff refers the Court to affidavit statements of the numerous decision-makers in this case who all deny that they even considered any alleged disability Plaintiff might have.  Plaintiff thus appears to conceive the Rehabilitation Act to mandate a form of affirmative action whereby employers are required to weigh a person's disability as a favorable factor when making employment decisions.  This, however,

reveals a fundamental misunderstanding on Plaintiff's part. As the United States Court of Appeals for the Eleventh Circuit observed in <u>Berg v. Florida Dept. of Labor and Employment Security</u>, 163 F.3d 1251 (11th Cir. 1998),

> [T]he laws in this country directed towards ending discrimination against people with disabilities are designed not to provide a disabled person with benefits because of his or her disability (except when the law authorizes an affirmative action program to correct past injustice), but to eliminate unfair burdens imposed only on those with disabilities. <u>See</u> <u>Kornblau v. Dade County</u>, 86 F.3d 193, 194 (11th Cir. 1996) ('The purpose of the [Americans with Disabilities Act] is to place those with disabilities on an equal footing, not to give them an unfair advantage.').

163 F.3d at 1256. <u>See also</u> <u>Gaines v. Runyon</u>, 107 F.3d 1171, 1178 (6th Cir. 1997) ("The Rehabilitation Act has never been interpreted to mandate preferential treatment of an employee simply because he is handicapped"). Accordingly, not only are the decision-makers' statements <u>not</u> direct evidence of discrimination based upon disability, they are affirmative evidence that no such discrimination occurred. The Court concludes that Plaintiff has failed to present direct evidence of discrimination, be it based upon age, race, sex, or disability.

### 2. Circumstantial Evidence

Although Plaintiff has not presented direct evidence of discrimination, he may seek to prove his case through circumstantial evidence, under the burden-shifting analysis set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>Bogle v. Orange County Bd. of County Comm'rs</u>, 162 F.3d 653, 656 (11th Cir. 1998). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. <u>McDonnell Douglas</u>, 411 U.S. at 802; <u>Eskra v. Provident Life and Acc. Ins. Co.</u>, 125 F.3d 1406, 1411 (11th Cir. 1997). Plaintiff may establish a prima facie case of age discrimination under the ADEA by presenting sufficient evidence to indicate (1) that he was a member of the protected group of persons between the ages of forty and seventy; (2) that he was subject to adverse employment action; (3) that a substantially younger person filled the position that he sought; and (4) that

he was qualified to do the job for which he was rejected. <u>Bogle v. Orange County Bd. of County Com'rs</u>, 162 F.3d 653, 656-57 (11th Cir. 1998); <u>Turlington v. Atlanta Gas Light Co.</u>, 135 F.3d 1428, 1432 (11th Cir.), <u>cert. denied</u>, ___ U.S. ___, 119 S.Ct. 405 (1998). Plaintiff may establish a prima facie case on his Title VII claims of race and gender discrimination by presenting sufficient evidence to indicate (1) he was a member of a protected class; (2) he applied and was qualified for a position for which the defendant was accepting applications; (3) despite his qualifications, he was not hired; and (4) after his rejection the position remained open or was filled by a person outside his protected class. <u>Schoenfeld v. Babbitt</u>, 168 F.3d 1257, 1267 (11th Cir. 1999), <u>citing</u> <u>Welborn v. Reynolds Metals Co.</u>, 810 F.2d 1026, 1028 (11th Cir. 1987) (per curiam). To establish a prima facie case of discrimination under the Rehabilitation Act, an individual must show that (1) he has a disability; (2) he is otherwise qualified for the position; and (3) he was subjected to unlawful discrimination as result of his disability. <u>Sutton v. Lader</u>, 185 F.3d 1203, 1207 (11th Cir. 1999).[8]

If the employee meets his burden to establish a prima facie case on any claim of discrimination, then a presumption arises that the challenged action by the employer was motivated by an unlawful discriminatory intent. <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 254 (1981); <u>Jones v. Gerwens</u>, 874 F.2d 1534, 1538 (11th Cir.1989). The burden then shifts to the employer to present evidence indicating that it took the employment action based upon a legitimate, non-discriminatory reason. <u>Burdine</u>, 450 U.S. at 254-55. If the employer successfully articulates such a reason, then the burden shifts back to the plaintiff to show that the proffered reason is really pretext for unlawful discrimination. <u>Id.</u> at 255-56.

---

[8]For purposes of establishing a prima facie case with respect to each of his discrimination claims, Defendant concedes that Plaintiff was at all relevant times within the group of persons between 40 and 70 protected under the ADEA and that he is protected under Title VII by virtue of his status as both white and male. Moreover, although Defendant seems to question whether Plaintiff's diabetes or depression qualifies him as "disabled" for purposes of the Rehabilitation Act, see Defendant's Brief at 90-91, Defendant does not present sufficient evidence or argument to establish that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law based upon Plaintiff's "disabled" status.

In other words, Plaintiff must provide sufficient evidence to allow a reasonable fact finder to conclude that the proffered reasons were not actually the motivation for the adverse employment decision in question. <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1538 (11th Cir. 1997), <u>cert. denied</u>, 118 S.Ct. 685 (1998).  He may do this (1) by showing that the legitimate nondiscriminatory reasons should not be believed;  or (2) by showing that, in light of all of the evidence, discriminatory reasons more likely motivated the decision than the proffered reasons.  <u>Mayfield v. Patterson Pump Co.</u>, 101 F.3d 1371, 1376 (11th Cir. 1996) (<u>quoting</u> <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 256 (1981).  The Court will now analyze each of Plaintiff's discrimination claims in light of this framework.

### i. MSFC-ES-06-94

The position corresponding to this announcement was the Environmental Engineering Division Director, in the Senior Executive Service.  Sylvia Thomas, a Personnel Management Specialist and Staff Assistant to the Director of Human Resources at MSFC, was responsible for processing this vacancy announcement.  According to her affidavit, in order to qualify for the position, candidates have to demonstrate possession of responsible experience to perform the duties of the position, which would have been gained at or above the GS/GM-15 level or its equivalent.  Thomas claims she eliminated Plaintiff from contention for the job because his application indicated that he, as a GS-14 level employee, did not have experience at the GS/GM 15 level of responsibility.  Although she admitted it was theoretically possible to appoint an employee whose experience is below the GS/GM 15 level, Thomas states that she is not aware of it ever happening at NASA and that it never happened at the MSFC while she was in her position from 1989 to January 1999.  Of the seven applicants for the position, the three Thomas classified as "not qualified," which included Plaintiff, were in grade GS/GM-14 or below, while of the four applicants she rated "qualified" or "highly qualified," none were lower than the GS/GM-15 level.  Even assuming that Plaintiff can establish that he met the bare minimum qualifications for the purposes of proving a prima facie case of age, race, sex, and

disability discrimination,[9] the Court concludes that Plaintiff has not presented sufficient evidence indicating that the reason proffered for his non-selection, his want of experience at the GS-15 level or its equivalent, is a pretext for unlawful discrimination, as all the applicants of Plaintiff's rank or below were eliminated from consideration. Summary judgment is due to be granted in favor of Defendant as to Plaintiff's discrimination claims regarding this position.

### ii. CPP 94-66-CV

Announcement CPP 94-66-CV was for Supervisory, AST, Director Systems Safety & Mission Assurance Office, Systems Safety & Reliability Office. The evidence indicates that the selectee for this position, Amanda Harris, was a non-disabled black female who is approximately 25 years younger than Plaintiff. The Court will assume that Plaintiff can make out a prima facie case of age, race, sex, and disability discrimination here. Defendant must, therefore, produce evidence that it did not select Plaintiff for a non-discriminatory reason. Defendant offers the affidavit of Kevin C. Plank, who performed the initial screening of the 15 applications submitted for this position. He eliminated Plaintiff and four other applicants from consideration at this stage. Plank explained that in order to rate an applicant "eligible" for this GS-15 level position, his or her application had to show one year of experience in an appropriate field at least equivalent in difficulty and responsibility to a GS-14 level within or closely related to the AST speciality for which application was made. Plank claims that in addition to being disorganized and often duplicative, irrelevant and illegible, Plaintiff's application, in most cases, simply stated that he had performed duties from 1960 to the present, and since Plaintiff indicated that he had been a GS-14 level employee since 1988, it was unclear what grade level Plaintiff was when he performed particular duties. In addition, Plank alleges

---

[9]For the purposes of establishing a prima facie case of discrimination, an employee need only present evidence indicating that he met the minimum eligibility qualifications, not that he met all the qualifications that an employer might merely find preferable in candidates for a given position. See, e.g., Carter v. Three Springs Residential Treatment, 132 F.3d 635, 643 (11th Cir. 1998); Eastland v. TVA, 704 F.2d 613, 624 (11th Cir. 1983).

that he would not have found Plaintiff qualified even if he had supplied the proper dates because Plaintiff would often assert only that he had the required skills and knowledge for the position without providing information regarding how, when, or where his related experience took place.

Plaintiff fails to present sufficient evidence to indicate that Defendant's proffered reasons for not selecting him were merely pretextual. Suffice it to say that even a cursory examination of the voluminous application Plaintiff submitted for this position more than confirms Plank's characterizations of it as disorganized and largely duplicative, irrelevant, and illegible. See Defendant's Ex. 41, Attachment 10F; Plaintiff's Ex. 41. Plaintiff appears to acknowledge his application did not relate specific information regarding his GS level when he performed certain duties, as he contends that Harris's application was deficient in the same ways Plank alleges his was. See Plaintiff's Brief at 17. However, a copy of Harris's application is not included in the record. Plaintiff also asserts that he was in fact more qualified than Harris based upon his many years with NASA, his patents, technical reports, and years of supervisory experience. But this fails to address the application deficiencies offered by Defendant as the justification for Plaintiff's non-selection. In order to show that reasons proffered by an employer for an employment decision are a pretext for unlawful discrimination, a plaintiff's response must address the specific reason articulated. See Combs, 106 F.3d at 1528 ("[T]he plaintiff has the opportunity to come forward with evidence . . . sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.") As the United States Court of Appeals for the Seventh Circuit succinctly explained,

> In order to prove pretext, [a plaintiff]'s burden is to squarely rebut the articulated reason for his discharge. See Smith v. General Scanning, Inc., 876 F.2d 1315, 1319 (7th Cir. 1989) ('The plaintiff must focus on the specific reasons advanced by the defendant to support the discharge.') (citing LaMontagne v. American Convenience Products, Inc., 750 F.2d 1405, 1414 (7th Cir. 1984)).

For example, an employee discharged for poor attendance does not prove pretext by arguing that no other employee did the job better. He only proves pretext by establishing that his attendance was good enough to keep his job.

Plair v. E.J. Brach & Sons, Inc., 105 F.3d 343, 349 (7th Cir. 1997). See also (11th Cir. 19–)

Plaintiff also alleges that Plank was a member of a conspiracy to deny him his civil rights and "was acting under management's instruction to disqualify him" for the position, Plaintiff's Brief at 14. However, Plaintiff presents no evidence of a conspiracy against him, and his vague and conclusory allegations are insufficient to withstand a properly supported motion for summary judgment. Fullman v. Graddick, 739 F.2d 553, 556 (11th Cir. 1984). The Court concludes Plaintiff has failed to carry his burden to show pretext and that summary judgment is due to be granted in Defendant's favor on the discrimination claims regarding this vacancy.

### iii.  CPP 95-49-CV

Including Plaintiff, there were ten applicants for this position, Supervisory Aerospace Flight Systems/Division Chief, Thermal and Life Support Division.  James W. Owen, a non-disabled white male, approximately 15 years Plaintiff's junior, was selected.  Camille S. Velvet was the personnel staffer who did the initial screening of applications, and she determined at that stage that the Plaintiff and one other person were ineligible for further consideration. Noting that Plaintiff's listed experience was mainly in the areas of electrical component failures and the evaluation of electronic and electro mechanical parts, she claims she found Plaintiff ineligible because such failed to demonstrate how he met the one year of qualifying specialized experience in or closely related to thermal analysis, thermal protection and control, environmental control, and life support systems at the GS-14 level.  She also found that Plaintiff's application was poorly written and difficult to follow, included irrelevant information, and he failed to relate his experience to the job elements of the position.  One of Velvet's supervisors, Sue Payne, also reviewed the applications of those Velvet found ineligible, and concurred with her assessments.

Plaintiff has failed to establish a prima facie case on any of his discrimination claims because he has not presented sufficient evidence to indicate he was qualified for this position. Plaintiff offers that he had worked for NASA for 38 years and that his work resulted in six patents[10] and that he has written 43 technical reports. However, he fails to explain how his length of service with NASA generally, the patents, or the technical reports show that he had one year of specialized experience in or closely related to thermal analysis, thermal protection and control, environmental control, and life support systems at the GS-14 level. Thus, summary judgment is due to be granted for Defendant on Plaintiff's discrimination claims regarding this position.

### iv. CPP 95-50-CV

This announcement was for the position of Supervisory AST, Mission Operations Integration/Manager, Integration and Operations Office, Space Station Operations and Utilization Office. The selectee was Paul Hamby, a non-disabled white male approximately 1 month older than Plaintiff. Camille Velvet also did the initial screening of the 15 applications for this position, and she again classified Plaintiff, along with four other applicants, as ineligible. With regard to Plaintiff, Velvet rated him as ineligible, she states, based upon her finding that his application failed to provide sufficient information to make a determination that he met eligibility requirements. More specifically, Plaintiff's application, Velvet claims, stated that he "has demonstrated ability" in required KSAOC's, but he failed to provide information as to the duties performed or how, where, and when his experience was gained. Payne again concurred with Velvet's assessments after reviewing the applications of those classified as "ineligible."

The Court finds that Plaintiff fails to make a prima facie case of age, race, or sex discrimination, given that an older white male was selected for the position. Moreover, even

---

[10]The evidence indicates that Plaintiff's six patents relate to work he performed for NASA between 1968 and 1971. Def. Ex. 29.

assuming a prima facie case, Plaintiff fails to present sufficient evidence of pretext. As part of his conspiracy theory, Plaintiff asserts that Velvet was instructed by management to disqualify him for this position, but, again, he presents no supporting evidence. Plaintiff claims that his application was not deficient in the manner cited by Velvet. An examination of Plaintiff's application, however, does not support his position. Plaintiff again refers to his six patents without explaining how they render him qualified for the position or how they call into doubt the credibility of Velvet's proffered reasons. The Court concludes that summary judgment on Plaintiff's discrimination claims pertaining to this vacancy is due to be granted for Defendant.

### v. CPP 94-34-DC

This announcement was for Supervisory AST, Flight Systems Test/Division Chief, Structural Test Division. Dr. James Blair, then the Director of the Structures and Dynamics Laboratory was the selecting official for this position. Plaintiff and six other persons applied for this position, and all were determined to meet minimum eligibility requirements. Blair then interviewed each of the remaining candidates and selected Clifton Kirby for the position, allegedly based upon his superior experience in vibration and acoustics area and other structural testing fields of the Structures and Dynamics Laboratory. Kirby, like Plaintiff, is a white male, which leads the Court to conclude Plaintiff has not established a prima facie case on either his Title VII race or gender discrimination claim. Moreover, it is undisputed that Kirby was born May 28, 1936, making him several months older than Plaintiff. Thus, Plaintiff cannot establish a prima facie case of age discrimination under the ADEA. See Pace v. Southern Ry. System, 701 F.2d 1383, 1390 (11th Cir. 1983). Even if it is assumed that Plaintiff can make out a prima facie case of discrimination based upon his disability, Plaintiff has not presented sufficient evidence to cast doubt on the reason proffered by Blair for selecting Kirby. In an attempt to show pretext, Plaintiff alleges that he has six patents, had written 36 technical reports, and received numerous awards. As so often plagues him in this action, Plaintiff fails to explain how the accomplishments he cites, which were earned while he worked in the Astrionics

Laboratory, relate to the particular skills or knowledge required for this position in the Structures and Dynamics Laboratory, where Kirby had worked for years. See Standard v. A.B.E.L. Services, Inc., 161 F.3d at 1332-33 (holding that a plaintiff failed to establish pretext where he did not dispute that the successful applicant had specific relevant experience cited by the employer and instead merely asserted that he was objectively as qualified). Summary judgment is due to be granted in Defendant's favor on Plaintiff's discrimination claims with respect to this promotion.

### vi. CPP 94-100-CL

This announcement was for a position as Supervisory AST, Technical Resources Management/Manager in the Program Planning and Control Office, Payload Projects Office. Carolyn Lundy was the personnel management specialist in charge of initially screening the applications submitted for this position. Lundy convened a three-member panel to evaluate, rate, and rank the applications. After this review, Plaintiff was ranked 12th of the 12 applicants seeking the position, which meant that his name was not submitted to the selecting official. Lundy explains that Plaintiff's application scored lowest because his application evidenced little or no experience in the first three KSAOC for the position, especially the second and third, which were, respectively: "Skill in performing technical resources management functions related to cost analysis techniques and parametric cost estimating," and "Knowledge of business management techniques and Government and contractor financial systems." Defendant Ex. 41 Attachment 16a.

The Court concludes Plaintiff has failed to establish that he was qualified for this position. In his brief, Plaintiff does not address the qualification deficiencies cited by Lundy, instead only asserting broadly that he was more qualified than the selectee, a white male who was seven years younger, based upon his six patents and the fact that he had 15 years of supervisory experience in comparison to the selectee's 10 years. In addition, Lundy referred the names of the two other applicants older than Plaintiff to the selecting official. Summary

judgment for Defendant will be granted on these claims.

### VII. CPP 94-46-CL

This announcement was for a position as Supervisory AST, Technology Utilization/Manager, Technology Utilization Office. Lundy was also the personnel management specialist for this vacancy. After reviewing each of the 12 applications for required education, time-in-grade, specialized and total experience requirements, she assigned a numerical score to each application for required education, in accordance with the rating schedule for the Competitive Placement Plan. She ranked each application based upon score, with a range from 82 to 95. Determining that a meaningful breach occurred at 94, she certified the names of the nine candidates scoring at or above that level to the supervisor for the final selection. Plaintiff was ranked 11th of the 12 applicants with a score of 89, and his name was not submitted to the selecting official. Two applicants were older than Plaintiff; one made the cut and the other did not. Lundy explains that under the placement plan then in effect, Plaintiff's most recent performance appraisal had a significant bearing on his low score. Plaintiff had received a "fully successful" rating,[11] meaning that he could receive a score of only 90, below the cut-off Lundy established.

The selectee for this position was a Hispanic male born May 23, 1946. While the Court concludes Plaintiff cannot establish a prima facie case of sex discrimination, the Court will assume the existence of a prima facie case of race, age and disability discrimination. Plaintiff again fails, though, to present sufficient evidence of pretext. As before, Plaintiff compares the number of patents he has with that of the selectee (in this case 6 to 1), and he asserts that he has far greater supervisory experience. However, he again fails to present any explanation how either of those things suggest the numerical score ranking he received from Lundy was incorrect

---

[11]NASA employs five ratings for its "Management and Supervisory Performance Appraisal Summary" for each employee. These are from highest to lowest, "Outstanding," "Highly Successful," "Fully Successful," "Minimally Satisfactory," and "Unsatisfactory." See Defendant's Ex. 41 Attachment 10f at 5.

using the pre-established criteria employed under the Competitive Placement Plan, see Def. Ex. 41 Attachment 15f, or that otherwise dispute Lundy's assertion that she disqualified Plaintiff from further consideration based upon his low score. Summary judgment is due to be granted for Defendant on the discrimination claims regarding this promotion.

### viii. CPP 95-58-JP.

This announcement was for a position as Supervisory AST, Aerospace Flight Systems/Chief, Operations and Utilization Office of the Space Station Project Engineering Office. Robert B. Goss, a white male approximately 10 years younger than Plaintiff, was selected. James H. Bramblett, the personnel management specialist assigned to this announcement, established a rating panel composed of himself, Robert Beaman from the "requiring organization" and Robert Smith, a "technical expert." Each member independently reviewed each application and rated the package. The scores were then averaged and ranked, from a high of 97 to a low of 75. Plaintiff scored 83.33, 15th out of the 16 remaining applicants. The panel observed a meaningful distinction at 92.33, which translated to the submission of the names of the top 12 ranked applicants. Bramblett explained that Plaintiff's low score reflected a lack of required experience in the areas of flight operations and payload operations and integration and a lack of experience as a lead engineer or supervisory engineer or any other management experiences in these areas.

Plaintiff fails to rebut the reasons proffered by Defendant for Plaintiff's non-selection. Plaintiff makes his now-standard reference to his six patents without tying them to the position in question, and he also states that he has far greater supervisory experience. He fails, however, to explain how these accomplishments indicated that he should have had a higher score from the rating panel, which used a pre-established criteria under the Competitive Placement Plan, see Def. Ex. 41 Attachment 13f, and that such higher score would have resulted in, at the very least, the submission of his name to the selecting official. Instead, Plaintiff makes a bare assertion that "management attempted to rate him down," Plaintiff's Brief at 21, in order to

discriminate against him. Such conclusory assertions, in the absence of supporting evidence, are insufficient to withstand Defendant's properly supported motion for summary judgment. See, e.g., Holifield v. Reno, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997). Accordingly, summary judgment in Defendant's favor is warranted on these discrimination claims.

### ix. CPP 93-28-DC.

This announcement was for Supervisory AST, Electrical Systems, Division Chief, Electrical Design Division, Astrionics Laboratory. Plaintiff had experience in this area, and there is no dispute that he was at least minimally qualified. Seven applicants, including Plaintiff, were identified on the promotion certificate, and the selecting official, Dr. Joseph L. Randall, then the Director of the Astrionics Lab, interviewed each one, with his deputy, Sherman Jobe, present. Randall ultimately selected Michael D. Martin, a white male six years younger than Plaintiff, allegedly based upon Martin's superior qualifications. More specifically, Randall stated that he considered Martin's "experience" and that he found him more qualified "to interface with the management and to represent the Division," and that Martin "handled himself with people both inside and outside the laboratory, in a way that was superior to the other candidates, including [Plaintiff]." Def. Ex. 35 at 3. Randall explained that he and Jobe both believed Martin "handled the interview questions much better than [Plaintiff] did." Randall also stated that he was familiar with the work of both Martin and Plaintiff and was persuaded, he claims, by his assessment that Martin's "performance in recent years had been much stronger than [Plaintiff's], and [Martin] had been working in higher level positions." Id.

Martin is a white male, thus the Court finds that Plaintiff has failed to establish a prima facie case of race or sex discrimination. The Court will assume, however, that Plaintiff has established a prima facie case of age and disability discrimination on this claim. As to Defendant's burden on rebuttal, the Court would note that several of the reasons proffered by Randall are extremely subjective in nature. In particular, Randall claims that he preferred Martin over Randall because, among other reasons, he found the latter (1) to be "more qualified

Page 29 of 52

to interface with the management and to represent the Division," (2) better able to "handle[ ] himself with people both inside and outside the laboratory," and (3) "handled the interview questions much better than [Plaintiff] did."  Precedent from this circuit indicates that reasons such as these are so purely subjective that an "employee is left without any objective criteria to point to in order to show competence" Miles v. M.N.C. Corp., 750 F.2d 867, 871-72 (11th Cir. 1985), and leave the court without any objective, ascertainable criteria to evaluate.  Id. Of course, such subjective justifications are non-discriminatory on their face, and they are sufficient to support a verdict in favor of the employer if the trier of fact believes they were actually the reason for an employment decision.  Cf. Chapman v. AI Transport, 180 F.3d 1244, 1250 (11th Cir. 1999)  ("[A]s a practical matter, individual and personal perceptions of a candidate's potential to 'fit' or function well within the employer's organization often figure prominently in the decision to hire or promote; we do not intend to second-guess employer's legitimate business decisions in this regard.").  Nonetheless, courts have been hesitant to say that the proffering of such vague and subjective reasons, absent some objectively verifiable supporting evidence, allows the entry of summary judgment in the employer's favor.  For example, the United States Court of Appeals for the Eleventh Circuit ruled in Carter v. Three Springs Residential Treatment, 132 F.3d 635 (11th Cir. 1998), that an employer was not entitled to summary judgment on a black employee's Title VII race discrimination claim where it alleged the decision was made to promote a white employee based upon the latter's supposedly superior "special knowledge and skills," "initiative and judgment capabilities," and ability "to relate to people in a manner to win confidence and establish support."  More recently, that court similarly held that summary judgment had been improperly granted on an employee's ADEA claim based upon the plaintiff's alleged failure to rebut the employer's proffered explanation that the plaintiff "did not interview well." Chapman, 180 F.3d at 1249-50.  Accord Aka v. Washington Hosp. Center, 156 F.3d 1284, 1298 (D.C. Cir. 1998); Thomas v. California State Dep't of Corrections, 972 F.2d 1343 (table), 1992 WL 197414 *3

(9th Cir. 1992) ("Were we to hold that the unsupported claim that a particular candidate was a 'superior' interviewee was sufficient without more to require summary judgment for an employer, we would immunize from effective review all sorts of conscious and unconscious discrimination.").

As might be expected, the only evidence Plaintiff offers to counter the subjective justifications proffered by Randall are his summary assertions that they are not true. But setting these reasons to the side for the moment, however, Randall also named other reasons for choosing Martin over Plaintiff that are subject to greater objective verification. Namely, he believed that Martin's "performance in recent years had been much stronger than [Plaintiff's]," and he pointed to the fact that Martin had been working in higher level positions. Plaintiff attempts to show that these justifications are merely pretextual, by again pointing to the fact that he has six patents and has written numerous technical reports, while Martin has no patents and allegedly has not published any technical reports. Plaintiff also points out that he has more years a supervisor than Martin, 15 to 10, and that Martin used to be under his supervision at one point in time. However, it is undeniable that Martin has been in positions with substantially greater responsibility than has Plaintiff for some time; indeed, Martin has been Plaintiff's supervisor since 1984. While Plaintiff was and is the Deputy Chief of a Branch within the Electrical Design Division at the time of this announcement in 1994 for the Division Chief position, Martin had been the Deputy Chief of that Division since 1992. In other words, Martin was a supervisor to Plaintiff's immediate supervisor. Moreover, a few months after Martin became Deputy Division Chief, the Division Chief was transferred, leaving Martin to handle the day-to-day activities of the Division. Def. Ex. 32 at 2. "[A] plaintiff is entitled to survive summary judgment, and judgment as a matter of law, if there is sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's proffered reasons for its challenged action." Combs, 106 F.3d at 1529. However, Plaintiff has presented no probative evidence refuting Randall's assertion that he promoted Martin based

upon Martin's stronger recent experience in positions with superior responsibility.  See Standard, 161 F.3d at 1332-33.  Summary judgment is due to be granted in favor of Defendant on Plaintiff's discrimination claims regarding this vacancy.

### x. CPP 94-61-DC

This announcement corresponded to a position as Supervisory AST, Electrical Power Systems, Division Chief, Electrical Power Division, Astrionics Laboratory.  Randall, who was again the selecting official, chose Robert T. Bechtel, a white male born June 12, 1941, for this vacancy.  Randall offers similar reasons for this selection as he did for the one preceding: Bechtel has served as the Deputy Chief of this Division for almost two years and had "specialized knowledge of the work duties of this position"; he allegedly had "proven technical expertise in electrical power systems; he had the "ability to provide leadership to the Division"; and he had greater ability "to interface with management" and had proven his ability to conclude projects in a timely manner."

Assuming that Plaintiff is at least minimally qualified for this position, he cannot establish a prima facie case of race or sex discrimination because the selectee was another white male. In addition, the Court concludes that Plaintiff cannot establish a prima facie case of age discrimination, either.  In order to establish a prima facie case of discrimination under the ADEA, a plaintiff must show that the chosen applicant was "substantially younger" than himself. Bechtel was 53 at the time of his selection, placing him, like Plaintiff, well within the class protected under the ADEA.  However, Bechtel was also less than five years younger than Plaintiff, and, under the facts of this case, the Court concludes that he was not "substantially younger," so as to create a presumption that Plaintiff did not receive the position based upon age. See, e.g., Bush v. Dictaphone Corp., 161 F.3d 363, 368 (6th Cir. 1998) (holding demoted employee was not replaced by someone substantially younger where he was replaced by a woman less than five years younger who was herself more than 40 years old); Cianci v. Pettibone Corp., 152 F.3d 723, 728 (7th Cir. 1998).

As to any claim of disability discrimination, Plaintiff fails to present sufficient evidence that the reasons offered by Randall for selecting Bechtel were pretextual. Plaintiff cites that he had 15 years of supervisory experience, but he cannot dispute that Bechtel, as a Deputy Division Chief, was in a position of greater supervisory responsibility than Plaintiff, who was only a Deputy Branch Chief. Moreover, while Plaintiff claims that he had superior knowledge of electrical systems, Bechtel was the Deputy Chief of the very Division in which the vacancy appeared. Plaintiff was in the same Laboratory (Astrionics) as Bechtel, but he was in a different Division.

Plaintiff also devotes much energy to arguing that Randall, the selecting official, was the supervisor and did the KSAOC appraisal of both Martin and Bechtel. Indeed, Plaintiff repeatedly characterizes the promotion of applicants from the laboratory or organization offering the position to be a process of "preselection" and the selecting official's choice of one of his or her subordinates for a promotion to be a form of "conflict of interest," "personal favoritism," or general "unfairness." However, it is only natural to expect that a selectee would often be the one with proven experience within position's particular field, and this would seem to be even more true in this case because the vacancies require skills and knowledge of a highly technical and specialized nature. Moreover, even assuming managers did promote persons based upon being more familiar with their work or friendly with them personally, such does not mean that NASA violated either the ADEA, Title VII, or the Rehabilitation Act. There are many motivations for an employment decision that one might consider "unbecoming or small-minded" but that also are permissible under federal law, "such as back-scratching, log-rolling, horse-trading, institutional politics, envy, nepotism, spite, or personal hostility." Fisher v. Vassar College, 114 F.3d 1332, 1337 (2nd Cir. 1997) (en banc), cert. denied, 118 S.Ct. 851 (1998). See also, e.g., Womack v. Runyon, 147 F.3d 1298 (11th Cir. 1998) (postal employee did not state a cognizable claim under Title VII based upon allegations that another employee was chosen for a promotion based upon her alleged consensual sexual relationship with the

selecting official); <u>Platner v. Cash & Thomas Contractors, Inc.</u>, 908 F.2d 902, 905 (11th Cir. 1990) ("To hold that favoritism toward friends and relatives is per se violative of Title VII would be, in effect, to rewrite federal law"). Federal law allows employers to take adverse action against their employees for any reason, fair or unfair, so long as the decision does not stem from a protected characteristic. <u>Rodriguez-Cuervos v. Wal-Mart Stores, Inc.</u>, 181 F.3d 15, 22 (1st Cir. 1999). Thus, absent discrimination based upon age, the ADEA does not interfere, "no matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers . . . ." <u>Elrod v. Sears, Roebuck and Co.</u>, 939 F.2d 1466, 1470 (11th Cir. 1991) (citation omitted). The Court concludes that summary judgment is due to be granted in Defendant's favor on these discrimination claims.

### xi. CPP 95-52-DC.

Randall was again the selecting official for this position, Supervisory AST, Navigation Guidance & Control Systems/Division Chief, Instrumentation & Control, Astrionics Laboratory. For this position, Randall chose Dr. Michael E. Polites, who, at 51, was a white male approximately eight years younger than Plaintiff. Plaintiff can establish that he was at least minimally qualified for the position, and the Court will assume he can establish a prima facie case of discrimination on his age and disability claims, although not on his race and gender claims because Polites is a white male. Randall claims he selected Polites because of his extensive knowledge and experience in the technical guidance, navigation and control areas required by the position. Polites had worked in these areas since 1967 and was recognized as an authority in the satellite attitude control and determination area. Randall knew Plaintiff had no direct experience in guidance, navigation and control as he worked in a different division of the Astrionics Lab for the twenty years. Randall also said he disqualified Plaintiff from this promotion based upon Plaintiff's being suspended for 21 days in June 1994 for sexually harassing behavior toward female employees. Plaintiff has the burden to show that each of these reasons is a pretext for discrimination.

In an attempt to fulfill that obligation, Plaintiff again compares his patent output to that of the selectee, six to zero, and that he had been a supervisor for 15 years while Polites had not been a supervisor at NASA. Plaintiff also points out that Polites had not been working in the Astrionics Laboratory. However, Plaintiff does not offer any evidence indicating that Polites did not have the technical expertise cited by Randall or that such expertise was not the basis of the decision. The Court concludes that Plaintiff has not produced sufficient evidence to cast doubt on the justifications offered by Randall. See Standard, 161 F.3d at 1332-33. Accordingly, summary judgment is due to be granted for Defendant on Plaintiff's discrimination claims with respect to this vacancy.

### xii. CPP 94-30-VR

This vacancy announcement was for Division Chief, Engineering Physics Division, in the Materials and Processes ("M & P") Laboratory. Plaintiff and seven others were identified on the promotion certificate submitted to the selecting official, Paul H. Schuerer, Director of the M & P Lab. From this the Court will assume that Plaintiff met the minimum qualifications for the position for the purpose of establishing a prima facie case. Schuerer established an interview committee comprised of himself, his deputy, and a former holder of the vacant position. Following interviews of each candidate, Schuerer selected Melvin R. Carruth, a white male who was approximately 17 years younger than Plaintiff. Carruth was ranked highest by each member of the interview panel, while Plaintiff was ranked sixth of the eight candidates. Schuerer claims that Carruth was selected over Plaintiff based upon Carruth's experience as the Chief of a Branch within this Division in the M & P Laboratory for a number of years and upon the panel's evaluation that Carruth had the strongest technical background and the most experience in the specific applications of this Division, including contamination, environmental testing, and thermal coatings, as shown by more than a dozen professional papers or publications between 1990 and 1994 relevant to the M & P Laboratory and its work. Def. Ex. 37.

Plaintiff attempts to prove pretext by again citing his patents and technical papers, but he fails to explain how these related to the work of the M & P Laboratory. Plaintiff also raises the fact that he had more years with NASA both overall and as a supervisor than had the selectee, but these allegations fail to address the specific reasons cited by Schuerer for selecting Carruth over Plaintiff. Plaintiff again makes an unsupported and conclusory assertion that the panel somehow improperly "adjusted" the ratings to give Carruth a higher score and himself a lower score in order to discriminate and/or retaliate against him. The Court concludes, however, that Plaintiff has failed to present sufficient evidence of pretext. Summary judgment will be granted for Defendant on these discrimination claims.

### xiii. CPP 95-68-CL

This announcement was for Supervisory AST, Materials and Structures/Division Chief, Project and Environmental Engineering Division, M & P Laboratory. Schuerer was again the selecting official. Dennis E. Griffin, a white male approximately 16 years younger than Plaintiff, was selected. Plaintiff and five others were identified on the Promotion Certificate, so the Court will again assume the existence of a prima facie case on Plaintiff's disability and age claims. After Schuerer and his deputy conducted one-hour interviews with each applicant using preselected questions, Schuerer decided to select Griffin, the Chief of one of the Branches within this Division of the M & P Laboratory. Schuerer claims he chose Griffin based upon his in-depth knowledge of the organization derived from working in and with various organizational elements of the M & P Lab for nearly 20 years and because of his vast experience with materials, test procedures, systems and his involvement in the creation of databases used in the Lab.

Once again, Plaintiff attempts to show pretext by citing his patents and that he had been a supervisor for 15 years while the selectee had no patents and had been a supervisor for only 7 ½ years. He also repeats his argument that promotion from within a Division or a Laboratory constitutes some sort of unlawful employment practice. But as stated previously, it is not.

Plaintiff has failed to address Griffin's far superior experience within the M & P Laboratory, and he has not carried his burden at the pretext stage.  Summary judgment will be granted for Defendant on these discrimination claims.

### xiv. CPP 95-37-RE

This announcement stated the availability of two positions.  One was Supervisory AST, Director, Systems Safety and Reliability Office, Safety and Mission Assurance ("S & MA") Office, and the other was Supervisory AST, Director, Observatory Assurance Office, S & MA Office.  James H. Ehl, then the Director of the S & MA Office, was the selecting official for both positions.  For the first position, Ehl chose Edward Kiessling, a white male 14 years younger than Plaintiff, and for the second he chose James Hatfield, a white male less than five years younger than Plaintiff.  Ehl claims, however, that he chose Kiessling and Hatfield primarily based upon their superior experience in the work areas of the S & MA Office.  <u>See</u> Def. Ex. 28.

The Court will assume Plaintiff can make a prima facie case, but he fails to address the principal reason offered by Ehl for selecting Kiessling and Hatfield for the two positions: their greater experience in the specific operations and tasks of the S & MA Office.  Plaintiff cites his six patents and greater supervisory experience and time of service with NASA generally, and he again complains that it was "preselection" and a "conflict of interest" for Ehl to select persons from his own organization for these jobs.  However, as explained elsewhere, these allegations and arguments are insufficient to withstand Defendant's properly supported motion for summary judgment on Plaintiff's discrimination claims.  Accordingly, summary judgment for Defendant will be granted on the discrimination claims regarding these vacancies.

### xv. CPP 95-46-JB

This position was Supervisory AST, Aerospace Flight Systems/Chief, Technical Staff Office, Systems Analysis and Integration ("SA & I") Lab.  The Court will assume the existence of a prima facie case of discrimination.  Strickland interviewed all nine candidates, and selected

Nelson C. Parker on June 13, 1995, allegedly because of his demonstrated working knowledge of and practical experience with manipulating software plans and data and because he had about 20 years experience within the SA & I Lab, where this position was located. Strickland claims that Plaintiff did not demonstrate sufficient experience in the functions of the SA & I Lab. As is his wont, Plaintiff counters (1) that he has six patents (which he does not link to the skills and knowledge of the position) while Parker has none; (2) that he has more supervisory experience than Parker; and (3) that it was improper for Strickland to promote Parker from within the SA & I Lab. For reasons previously explained, this is insufficient to show pretext; summary judgment will be granted for Defendant on these discrimination claims.

### xvi. CPP 95-54-CL and CPP 95-55-CL

These announcements were for positions in the Information Systems Services Office ("ISSO"). The first position, under announcement CPP 95-54-CL, was for Supervisory AST, Data Analysis/Division Chief, Operations Division, while the other position, under announcement CPP 95-55-CL, was for Supervisory AST, Data Analysis, Manager NASA Automatic Data Processing Consolidation Project Office. The Court assumes the existence of a prima facie case as to both positions, as Plaintiff's name in each case was submitted to Charles E. Houston, then the Director of the ISSO and the selecting official for both positions. Houston interviewed the candidates, and selected Deborah S. Bowerman, for the first position, allegedly because of her experience in and knowledge of the subject matter for this position. She had worked in area of computer services for NASA since 1975 and served as the Team Lead, Mission Systems Branch of the Information Systems Office, providing computational and communications support for several MSFC organizations. For the second position, Houston selected Terry M. Luttrell, also allegedly based upon his superior experience within the ISSO. The record indicates that Luttrell had worked in that office since 1983 and in the communications area since 1975. Houston claims that he perceived Plaintiff to lack experience in the relevant area. In order to carry his burden at the pretext stage, Plaintiff argues that it was

Case 4:95-cv-03323-HDB   Document 85   Filed 11/30/99   Page 39 of 52


improper for Houston to promote from within the ISSO and that he was more qualified than the successful applicants because of his patents, his greater number of years in supervisory positions, and his 38 years of NASA service. Plaintiff has failed to satisfy his burden, and summary judgment will be granted for Defendant on these discrimination claims.

## Miscellaneous Actions

Plaintiff contends that he might assert discrimination and retaliation claims based upon the allegations of eight administrative complaints charging that he was subjected to other adverse actions besides not being promoted. Plaintiff's Brief at 5. Defendant contends that there are only five such administrative complaints still potentially at issue, and that even the allegations of those complaints, Defendant argues, are not properly before the Court because they allegedly were not set forth in the Plaintiff's judicial complaint in this case. The Court agrees that there are only five administrative complaints potentially still at issue. Three individual administrative complaints referenced by Plaintiff, which are dated June 21, 1995 and are part of the collectively designated Complaint 27(J), involve allegations relating to Plaintiff's 21-day suspension in 1994. See note 3, supra. As the Court has already explained, claims relating to that suspension are barred by the doctrines of res judicata and the law of the case. See Part III., supra. However, the Court concludes that the five miscellaneous administrative complaints are sufficiently referenced in the Plaintiff's judicial complaint so as to present potential claims based those allegations.

Specifically, Plaintiff asserts that he might recover under the ADEA, Title VII, and/or the Rehabilitation Act because he was allegedly subjected to the following: (1) pages were removed from his rebuttal affidavit to an EEO investigative report and EEO investigators failed to interview some of his witnesses, see Def. Ex. 8; (2) he was told he could not meet with EEO investigators or do other EEO-related activities on government time, see Def. Ex. 9; (3) he was denied an opportunity to take an extended-time buy-out to leave NASA, see Def. Ex. 10; (4) he was denied an opportunity to apply for an unannounced Deputy Director GS-15

level vacancy in S & MA that was filled by the lateral transfer of another GS-15 employee, see Def. Ex. 13; and (5) he received a "fully successful" performance evaluation for the year ending August 1995, instead of the "outstanding" rating he believed he deserved, see Def. Ex. 14. Defendant claims that he is entitled to summary judgment with respect to each of these claims. The Court will proceed to address each of these contentions in turn.

### xvii. Pages Removed from Affidavit and Failing to Contact Witnesses

Plaintiff filed an EEO complaint alleging that pages were removed from his rebuttal affidavit to an investigative report to an earlier EEO complaint he filed. Plaintiff also alleges that the EEO investigation was improper as the EEO counselor did not talk with several of Plaintiff's witnesses. Defendant contends, however, that even if true, these transactions are not, in themselves, "adverse employment action" sufficient to support a claim under the ADEA, Title VII, or the Rehabilitation Act. The Court agrees.

In Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1456 (11th Cir. 1998), the Eleventh Circuit indicated that the protections of Title VII, and thus also the ADEA,[12] may extend to adverse actions such as undeserved negative job evaluations and disadvantageous transfers of responsibility and toleration of harassment, which fall short of ultimate employment decisions like hiring and firing. However, it is clear that "not everything that makes an employee unhappy is an actionable adverse action." Doe v. Dekalb County School Dist., 145 F.3d 1441, 1448 (11th Cir. 1998), quoting Smart v. Ball State Univ., 89 F.3d 437, 441 (7th

---

[12]While Wideman was decided within the context of Title VII, it is well-established that the principles of Title VII cases may generally be adapted to claims brought under the ADEA and other federal laws similarly designed to prohibit unfair discrimination in employment. See, e.g., Combs v. Plantation Patterns, 106 F.3d 1519, 1530 n.4 (11th Cir. 1997); McNely v. Ocala Star-Banner Corp., 99 F.3d 1068, 1075 (11th Cir. 1996) (analyzing ADA claim in light of Title VII precedent). Thus, Wideman's pronouncement that job actions falling short of ultimate employment decision may be considered "adverse employment actions" for Title VII purposes would seemingly apply to ADEA claims as well. Cf. Graham v. State Farm Mut. Ins. Co., ___ F.3d ___, 1999 WL 979618, *10 (11th Cir. 1999) (implicitly recognizing that Wideman's holding regarding adverse job actions applies to claims brought pursuant to the Family Medical Leave Act).

Cir. 1996)." "[S]ome threshold level of substantiality . . . must be met for unlawful discrimination to be cognizable" as an adverse employment action. Wideman, 141 F.3d at 1456. "Otherwise . . . every trivial personnel action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." Doe, 145 F.3d at 1448, quoting Williams v. Bristol-Myers Squibb Co., 85 F.3d 270, 274 (7th Cir. 1996).

It appears from the evidence that while investigating the propriety of Plaintiff's June 1994 sexual harassment suspension, an EEO investigator declined to talk with three witnesses Plaintiff had suggested, on the ground that their affidavits, which Plaintiff had submitted, indicated that they did not have relevant information. That same investigator also seems to have decided not to attach those same affidavits as exhibits to Plaintiff's rebuttal affidavit, although she returned them to Plaintiff. While the actions of the EEO investigator of which Plaintiff now complains would potentially bear upon the EEO process to which they relate, those actions do not implicate any material change in the plaintiff's employment. Therefore, the Court concludes, they do not constitute "adverse employment action" capable of supporting Plaintiff's claims. See Malladi v. Brown, 987 F.Supp. 893, 918 (M.D. Ala. 1998) (an alleged unreasonable delay in responding to an employee's written request for an EEO counselor's report and the inappropriate referral of her charges to the VA central office for procedural review did not amount to an adverse job action); Boyd v. Brookstone Corp. of New Hampshire, Inc., 857 F.Supp. 1568, 1571 (S.D. Fla. 1994) (Employee did not state a claim for Title VII retaliation based on employer's alleged submission of manufactured evidence to the EEOC). Accordingly, summary judgment for Defendant will be granted with respect to claims founded upon the EEO investigator's failure to speak with witnesses and alleged removal of exhibits to Plaintiff's rebuttal affidavit.

### xviii. Told Not to Pursue EEO Claims on Government Time

Plaintiff claims that he might recover because Nicolas allegedly told him that Randall said that Plaintiff could not meet with EEO investigators or do other EEO-related activities on

government time.  Both Nicholas and Randall deny that any such statement was made.  While this appears to be more in the nature of a retaliation claim, the Court conceives that it might also be a discrimination claim as well.  The Court concludes that, in the absence of other harassment or discipline, the mere fact that statement was made, if it indeed was, does not itself constitute an adverse employment action capable of independently supporting a discrimination claim, as it does not reflect a material change in any of the terms, conditions, or privileges of Plaintiff's employment.  See, e.g., Mistretta v. Volusia County Dept. of Corrections, 61 F.Supp. 2d 1255, 1260 (M.D. Fla. 1999) (Verbal reprimands and threats of termination do not constitute adverse employment actions, for purposes of employment discrimination claim).

### xix. Lateral Transfer of Another Employee

Plaintiff claims that, because of unlawful discrimination, he was deprived of an opportunity to apply for a vacancy that was not announced.  Defendant concedes that in 1995 there was a vacancy for a GS-15 level position as Deputy Director of the S & MA Office, and that this vacancy was not announced, thereby precluding Plaintiff and others from submitting applications to compete for it.  The Court concludes that this would implicate an adverse employment action for ADEA purposes, for this is essentially another failure-to-promote claim.  However, in order to establish a prima facie case, Plaintiff must show that he met the minimum qualifications for this vacancy.  The Court concludes he has failed to do so.  It is undisputed that James Ehl, Director of the S & MA Office, appointed Amanda Harris to this unposted vacancy, using a lateral transfer policy.  Harris was already a GS-15 level employee by virtue of her being selected to a Division Chief position in the S & MA office under announcement CPP 94-66-CV. Plaintiff claims that this position should have been announced under the personnel rules, although he cites no supporting evidence for his position.  However, even if Plaintiff is correct on this point, Ehl stated that he required a GS-15 level employee to fill the slot.  Plaintiff was a GS-14, and thus ineligible.  Summary judgment for Defendant is due to be granted as to claims regarding this lateral transfer of Harris.

### xix.  Deferred Buy-Out

Plaintiff also complains that he was discriminated against by not being given the opportunity to take a deferred buy-out, whereby he would have been allowed to leave NASA with a separation incentive at any time of his choosing during the next to years.  In order to establish a prima facie case of disparate treatment on this claim, Plaintiff must to present sufficient evidence to indicate (1) he is a member of a protected class; (2) he was subjected to adverse employment action; and (3) his employer treated similarly situated employees not in the protected class more favorably.  <u>See, e.g.</u>, <u>Jones v. Bessemer Carraway Medical Center</u>, 151 F.3d 1321, 1324 (11th Cir. 1998).  Plaintiff's prima facie case fails because he cannot establish that NASA offered a deferred buy-out to any similarly situated employee of a different race, gender, age, or disability status.  Defendant has proffered evidence that only three employees at the MSFC, and none in the Astrionics Lab, were given the option of a deferred buy-out, and that all three were in the Senior Executive Service.  Plaintiff has failed to rebut this with substantial evidence indicating to the contrary.  Defendant is entitled to summary judgment as to claims based upon the deferred buy-out.  .

### xx.  "Fully Successful" Rating

Plaintiff also contends that he was a victim of discrimination by receiving a "fully successful" rating on his employee evaluation for the period ending August 15, 1995, instead of the "outstanding" rating Plaintiff felt he deserved.  As explained previously, employee evaluations at the MSFC ranged on a scale, from high to low, as follows: "outstanding," "highly successful," "fully successful," "marginally satisfactory," and "unsatisfactory."  Assuming that Plaintiff's mid-range evaluation constitutes an "adverse employment action" sufficient to support a claim of discrimination, the Court notes that Defendant has introduced evidence that Plaintiff's supervisors arrived at the "fully successful" rating after considering Plaintiff's performance and characterizing it overall as lacking in initiative and diligent effort.  Defendant also showed that Plaintiff had received a mixture of "fully successful" and "highly successful"

annual ratings for a number of preceding years. In response, Plaintiff offers a nonspecific assertion of his own good performance during the rating period. However, the pretext inquiry is concerned with the employer's perception of the employee's performance, not the employee's own beliefs." Standard v. A.B.E.L. Services, Inc., 161 F.3d 1318, 1332-33 (11th Cir. 1998), citing Holifield v. Reno, 115 F.3d 1555, 1565 (11th Cir. 1997). See also Richardson v. New York State Dept. of Correctional Service, 180 F.3d 426, 443 (2nd Cir. 1999) (Holding that an employee's conclusory allegation that she deserved an excellent, rather than an average, performance rating was insufficient to establish discrimination claim); see also Primes v. Reno, 190 F.3d 765, 767 (6th Cir. 1999) (federal employee's mid-range performance evaluation of "fully successful" was not the type of adverse employment action contemplated by Title VII). Plaintiff also claims that his supervisors downrated his evaluation so that they would receive higher bonuses. However, even if this is true, it indicates that his supervisors were motivated by greed, not by Plaintiff's age, race, sex, or disability. Defendant's motion for summary judgment is due to be granted as to these claims.

### C. Retaliation Claims

With respect to each adverse employment action challenged in Plaintiff's discrimination claims above, Plaintiff also alleges that NASA unlawfully retaliated against him because he filed EEO complaints and discrimination lawsuits. Title VII and the ADEA both provide that it is an "unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under their respective provisions. 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d). The Rehabilitation Act similarly protects employees from adverse employment actions based upon retaliation. See, e.g., Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996); Whitehead v. School Bd. for Hillsborough County, Fla., 918 F.Supp. 1515, 1522 (M.D. Fla. 1996).

Retaliation is a separate offense from discrimination, but the same analytical framework

applies to both types of claims.  Hairston v. Gainesville Sun Publishing Co., 9 F.3d 913, 919
(11ᵗʰ Cir. 1993).  Thus, an employee may attempt to prove his claims of retaliation with direct
evidence, with circumstantial evidence using the McDonnell Douglas presumption, or with
statistical evidence.  See id.; Carter v. Three Springs Residential Treatment, 132 F.3d at 641-
42; Forehand v. Florida State Hosp. at Chattahoochee, 89 F.3d 1562, 1574-75 (11ᵗʰ Cir.
1996).  Plaintiff claims that he can establish a prima facie case on his retaliation claims using all
three types of evidence.

First, Plaintiff claims that he has presented direct evidence of retaliation in the form of
George McDonough's deposition testimony.  Again, McDonough was the Director of the
Science and Engineering Directorate until May 1995, making him Plaintiff's fourth level
supervisor.[13]  In that deposition, McDonough indicated that he considered Plaintiff to have been
"the biggest thorn in the side of the organization he could possibly be for years," Plaintiff's Ex.
2 at 35-36, because of his prior EEO activity.[14]  McDonough also engaged in the following
exchange regarding a conversation he had with David Nicolas, Plaintiff's immediate supervisor,
about Nicolas's continued pursuit of discrimination claims:

A.    . . . I said to Dave, 'You have been put into a management
position at Marshall.  You have been selected and brought into the
family of people who are supposed to be managing Marshall.  And
when you, from that position, fight the system from within, it a
black mark' or whatever term.   And I'd say that again.

Q.    Would that be a black mark against his being promoted?

_____

[13]As explained earlier, Plaintiff was a Deputy Chief of a Branch that was within a Division of the
Astrionics Laboratory, which was, in turn, one of the organizations within the Science and Engineering
Directorate.  So between Plaintiff and McDonough were supervisors at the Branch, Division, and
Laboratory levels.

[14]Plaintiff's record of filing EEO complaints is substantial.  By Plaintiff's own count, he has filed
approximately 100 EEO complaints since October 1988, which accounts for at least 40 percent of all EEO
filings over a ten-year period at the MSFC, a facility of approximately 2,500 employees.

A.   Again, there's nothing on the sheet that says you hold this against them. I'm just saying that when people look at him – I think the people below him, the people above him, and the people around him look and say, 'Here's a guy who has been selected and brought up into this position, and he's still raising hell with them.' [T]hat's a black mark, or whatever you want to call it.

. . . .

Q.   . . . Now what you have just described for me as being the black mark, would it be your understanding that that is the consensus of opinion of people within the science and engineering directorate, both those above, below, and at the same level as [David Nicholas]?

. . . .

A.   I can only speak for my feelings about the matter . . . .

. . . .

Q.   [W]ould you agree that at the time you left the directorate of science and engineering that that was the prevalent attitude . . . ?

A.   I can't answer that.

Q.   Have you discussed with anybody at all in that organization?

A.   No.

. . . .

Q.   Would you expect others within the organization to have that attitude?

. . . .

A.   I wouldn't be surprised, yes, because, frankly, I have the attitude.

I admit that.

McDonough Deposition, Plaintiff's Ex. 2 at 50-54.

It is clear that McDonough's testimony can be interpreted to express at least some ill will towards Nicolas based upon his continued EEO activity after his promotion. And it might be further reasonably inferred that McDonough held Plaintiff in similar regard based upon the "thorn in the side" comment. However, McDonough's testimony is not direct evidence of retaliation against Plaintiff, as there is no evidence that McDonough was involved in any of the employment decisions of which Plaintiff complains. Plaintiff alleges that McDonough was a decision-maker and conspired with Randall and others to retaliate against Plaintiff because of his EEO activity, but Plaintiff presents no evidence to support this theory. Because there is no evidence that McDonough made any of the employment decisions in question, his remarks do not constitute direct evidence of retaliation. See Standard, 161 F.3d at 1330; Mauter v. Hardy Corp., 825 F.2d 1554, 1558 (11th Cir. 1987).

Plaintiff also presents statistical evidence in support of his claims that he was a victim of unlawful retaliation. Statistical evidence normally plays a larger role in disparate impact cases, in which a plaintiff attempts to show that some facially neutral policy or practice of an employer has a disproportionate adverse impact upon those in a protected class, the Eleventh Circuit Court of Appeals has also examined such evidence in disparate treatment cases, where a plaintiff attempts to show that he was a victim of intentional discrimination based upon a protected characteristic. See Mitchell v. USBI Co., 186 F.3d 1352, 1356 (11th Cir. 1999). Indeed, that court has noted that in an individual case of disparate treatment, such as this one, statistical information "can be relevant and important." Smith v. Horner, 839 F.2d 1530, 1537 n. 8 (11th Cir. 1988), quoting Carmichael v. Birmingham Saw Works, 738 F.2d 1126, 1131 (11th Cir. 1984). However, statistics alone cannot establish a prima facie case of unlawful individual disparate treatment, because a plaintiff must always show that each adverse employment decision of which he complains was the product of an unlawful motivation. See Carmichael,

supra.

In this case, Plaintiff submits a copy of an expert report by Dr. David Muse, which David Nicolas submitted in his prior lawsuit against NASA. See Plaintiff's Ex. 3 & 6. In this report, Muse attempts to show by the use of statistics that prior EEO activity was likely a consideration in promotion decisions at the MSFC. Specifically, Muse examined 23 promotional vacancies for which Nicolas applied and was found at least minimally qualified, but for which he was rejected. Plaintiff appears to have applied for 13 of these vacancies, and 12 are contested directly in this suit as well.[15]  Muse assumed that applicants were roughly equally qualified for the positions, that all selections were mutually independent, and that prior EEO activity had no bearing on the outcome of the selection process. Based upon his analysis, he found that the chances of selecting an applicant with no prior EEO activity for all 23 positions was less than 3 in 1,000. This led him to conclude that it was more reasonable to conclude that applicants with prior EEO activity were not afforded equal opportunity in these selection processes.

Defendant has moved the Court to strike this report on the grounds that it is inadmissible hearsay and that Plaintiff failed to identify Muse as either a fact witness in his disclosures or as an expert witness under Fed. R. Civ. P. 26(A)(2). But to give the benefit of the doubt to Plaintiff as a pro se litigant, the Court will consider the report for what it is worth. The Court finds, however, that Dr. Muse's statistical study has very little probative value because Dr. Muse has failed to establish a sufficiently strong theoretical foundation for his analysis. As the Eleventh Circuit Court of Appeals explained:

> The probative value of a regression analysis depends in part upon the inclusion of all major variables likely to have a large effect on the dependent variable. '[A] properly done study begins with a decent theoretical idea of what variables are likely to be important'."

---

[15]It appears that the only applicants for the 23 positions who had prior EEO activity were Plaintiff and Nicolas.

Eastland v. TVA, 704 F.2d 613, 623 (11th Cir. 1983) (citations omitted).  It does not appear that Muse undertook to understand any of the objective variables that would impact upon promotion selections at the MSFC, beyond whether applicants met the minimum eligibility requirements for promotion consideration.  Rather, he appears to have constructed a model of random selection among applicants who met minimum eligibility requirements, by assuming that those applicants were all roughly equally qualified.  Thus, he fails to take any account of the most obvious objective promotion selection criteria.  Most notably, Muse's study fails to account for an applicant's experience working in a particular laboratory upon applicants chances of selection.  For example, it is undisputed that of the 17 promotional vacancies filled under the Competitive Placement Plan in this case, 15 were awarded to persons who were working within the laboratory organization in which the vacancy occurred.  Of those 17 vacancies, 14 were outside of Plaintiff's laboratory organization.  It similarly appears the great majority of the promotions for which Nicolas applied were also outside of his laboratory organization.  Further, even if we may properly assume that, as a general rule, applicants with and without prior EEO activity would be equally qualified to be selected for a particular job, cf. De Medina v. Reinhardt, 686 F.2d 997, 1008 n.7 (D.C. Cir. 1982) (recognizing a "rebuttable presumption of an equal distribution of qualifications between minority and majority group applicants"), the validity of this assumption is questionable in this case given the extremely small sample of applicants with prior EEO activity.  Indeed, there appear to be only two applicants with prior EEO activity, Nicolas and Plaintiff, making it likely that their actual qualifications skew the results.  Thus, the Court concludes that other legitimate, qualification-based factors are at least as likely for the selection disparity Muse observed.  See Eastland, supra.

Plaintiff also attempts to show that he was retaliated against by using the burden-shifting framework of McDonnell Douglas.  In order to establish prima facie case of retaliation, the employee must show: (1) that he engaged in protected activity (2) that he was subjected to

adverse job action, and (3) that there is a causal nexus between the protected activity and the adverse action. See Sullivan v. National R.R. Passenger Corp, 170 F.3d 1056, 1059 (11th Cir. 1999); Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998); Raney v. Vinson Guard Service, 120 F.3d 1192, 1196 (11th Cir. 1997). If the employee satisfies this burden, the employer must come forward with evidence that it took the adverse employment action for some legitimate reason other than retaliation. Id. Once the employer does this, the employee must attempt to show that the proffered reason is a pretext for retaliation, in the same way as with discrimination claims. Id.

Defendant does not dispute that Plaintiff can establish that he engaged in protected activity, by virtue of his numerous EEO complaints, or that the promotions and other transactions sufficient to constitute "adverse employment action" for the purposes of his discrimination claims are also sufficient to support his retaliation claims. However, Defendant questions whether Plaintiff can prove a causal nexus between the two with respect to a number of his promotion claims. In order to establish this third factor, a plaintiff must show, at a minimum, that the decision-maker was aware of the protected activity. Defendant offers evidence that the persons who made the adverse employment decisions with respect to Plaintiff regarding the following promotion announcements had no knowledge of his protected conduct: CPP 93-34-CT (Def. Ex. 25); both positions under CPP 95-37-RE (Def. Ex. 28); CPP 95-54-CL & CPP 95-55-CL (Def. Ex. 30); and CPP 95-46-JB (Def. Ex. 38). Plaintiff offers no evidence to dispute this, save his own conclusory assertions that all persons in management were part of a conspiracy to retaliate against him. This is insufficient to create a genuine issue of material fact on the third element of his prima facie case with respect to these seven positions. Accordingly, summary judgment is due to be granted for Defendant as to those retaliation claims.

As to several other promotions, the Court has previously determined that Plaintiff failed to establish a prima facie case of discrimination because he failed to show that he was minimally

qualified. Those same conclusions also indicate that Plaintiff cannot establish a prima facie case of retaliation under the McDonnell Douglas framework. See Canino v. U.S. E.E.O.C., 707 F.2d 468, 472 (11th Cir. 1983). Summary judgment for Defendant is thus warranted on these retaliation claims as well.

As to Plaintiff's remaining retaliation claims, the Court will assume that he can make a prima facie case. However, as stated earlier with regard to Plaintiff's claims of age, race, sex, and disability discrimination, Defendant has definitely met its burden of presenting legitimate non-discriminatory reasons for Plaintiff's non-selection for the promotions and all other actions constituting adverse employment action. As with those discrimination claims, Plaintiff has failed to demonstrate that the proffered explanations are a pretext for retaliation. Plaintiff again reminds the Court of his 38 years experience with NASA generally, his six patents, his training courses, his technical reports, and his awards, but these are no more sufficient to show pretext with regard to his retaliation claims than they were with regard to his discrimination claims. These accomplishments, while worthy, do not directly rebut the reasons given for his non-selection. The only other potentially significant evidence Plaintiff offers to show retaliation are McDonough's "biggest thorn" and "black mark" remarks. However, because they were made by a non-decision-maker they are insufficient to indicate that a retaliatory reason was more likely for any of the employment decisions in question. In this case, Defendant's evidence of legitimate, non-discriminatory reasons for its actions are so strong as to rebut completely the inference raised by Plaintiff's prima facie case of retaliation. See Holifield v. Reno, 115 F.3d 1555, 1567 (11th Cir. 1997); Grigsby v. Reynolds Metals Co., 821 F.2d 590, 596 (11th Cir.1987). As a result, Defendant is entitled to summary judgment on all other retaliation claims.

## IV.  CONCLUSION

The Court determines that Defendant's motions to strike (Doc. Nos. 81 & 83) are due to be GRANTED IN PART, to the extent they seek to strike Plaintiff's claims regarding his 21-

day suspension and his non-selection for the positions corresponding to announcements CPP 91-23-DC and HQK 001, and DENIED in all other respects.  Plaintiff's "motion in objection" to the motions to strike (Doc. No. 84), which the Court treats in part as a motion for relief from a prior judgment based upon "newly discovered evidence," is due to be DENIED. The Court also concludes that there are no genuine issues of material fact and Defendant is entitled to judgment as a matter of law on all of Plaintiff's remaining claims, alleging discrimination and retaliation under Title VII, the ADEA, and the Rehabilitation Act.  Accordingly, Defendant's motion for summary judgment (Doc. No. 57) is due to be GRANTED, and Plaintiff's motion in opposition to Defendant's motion for summary judgment (Doc. No. 75), which includes a request for oral argument, is due to be DENIED.  And to the extent that Plaintiff's Motion in Opposition (Doc. No. 75) might be construed as a motion for summary judgment in his favor, it is likewise due to be DENIED.

DONE and ORDERED this 30th day of November, 1999.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE